**RELIABLE WOOD PRODUCTS CO. v. FLEMING.**
**No. 379.**

United States Emergency Court of Appeals.

Heard at Philadelphia, Pa., Feb. 14, 1947.
Decided March 7, 1947.

Samuel Engelbach, of Philadelphia, Pa., for complainant.

Louis L. Rochmes, of Washington, D. C. (Carl A. Auerbach, Gen. Counsel, and William R. Ming, Jr., Associate Gen. Counsel, both of Washington, D. C., OPA, on the brief), for respondent.

Before MARIS, Chief Judge, and MAGRUDER and McALLISTER, Judges.

McALLISTER, Judge.

On September 18, 1944, complainant asked the Office of Price Administration to establish a maximum price for its sales of a designated cedar wardrobe, in accordance with the provisions of Maximum Price Regulation 188, issued in July, 1942.[1] This Regulation provided for four pricing methods for articles not sold in the base period. For manufacturers like complainant, who were not in business during the base period and who manufactured new articles not comparable to other articles in their line with established ceilings, maximum prices were required to be determined by the Fourth Pricing Method, set forth in Section 1499.158 of the regulation. That section provided for the establishment of maximum prices in line with the maximum prices established by the regulation, upon the specific authorization of the Administrator.

In its application for a maximum price, to be based upon prices in line with the maximum prices theretofore established by the regulation, complainant set forth specifications and manufacturing costs of its product and accompanied its application with a photograph of the wardrobe in question. It requested a maximum price of $29.50 for sales to retailers. After the filing of a formal application embodying this request, the Administrator, on January 19, 1945, issued Order No. 3306, in accordance with the regulation, establishing maximum prices for complainant's wardrobe, of $16.61 for sales to jobbers, and $19.55 for sales to retailers.

---

[1] 7 F.R. 5872.

After the receipt of this order by complainant, it informally requested review of the order establishing the maximum prices, and submitted to the Office of Price Administration a sample wardrobe. Subsequently, the lumber used in this sample began to split, and complainant submitted a second sample. Later, the Office of Price Administration obtained a third sample of the wardrobe from a retailer who had purchased it from complainant.

On April 9, 1945, complainant filed a protest to the order. During the course of the protest proceedings, the Administrator incorporated in the record an affidavit setting forth specifications of the three sample wardrobes above mentioned. Further evidence was submitted by complainant and the Administrator also incorporated additional evidence in the record. The protest was referred to a Board of Review which heard oral argument and on September 11, 1946, made its report to the Administrator recommending that the protest be denied. The Administrator, on September 18, 1946, adopted the report of the Board of Review as his opinion and issued an order denying the protest.

At the present time, complainant is defendant in an enforcement action pending in the United States District Court for the Eastern District of Pennsylvania involving sales of the wardrobe at prices above those established by the protested order.

Complainant contends that the order issued by the Administrator establishing maximum prices for its wardrobe is invalid for several reasons: that the order was not accompanied by a statement of considerations; that the Administrator disregarded the differences in construction, cost of construction, and cost of labor, between the articles used as comparables by him, and the wardrobe of complainant; that he failed and neglected to consider the differences in the market, and competitive areas, in determining proper comparables; that he arbitrarily disregarded the comparables submitted to him by complainant; and that he erred in using photographs in comparing the wardrobe of the complainant with the wardrobes used by him as comparables in determining a price ceiling for complainant's wardrobe.

■ The first problem with which the Administrator was confronted in these proceedings was to ascertain the nature and quality of complainant's wardrobe. Complainant had submitted a photograph and a written description. Later, before the findings of the Board of Review were filed, there was the further evidence of the three different wardrobes of complainant. It had submitted two—one, after the lumber in the first had split; and a third had been secured by the Office of Price Administration from a retailer. The first sample was the one which the Administrator concluded was representative of complainant's product. The fact that the second wardrobe would have warranted a higher price, and the third, a lower price, may lead to the reasonable conclusion that complainant's wardrobe was manufactured with little adherence to uniform standards of quality. The question for determination involved the judgment of the Administrator as to which wardrobe was the most representative. Complainant alleged that the first represented the original wardrobe; that the third represented one of the very first wardrobes manufactured; and that the second represented substantially most of the wardrobes which it manufactured. However, the first wardrobe was submitted by complainant to the Administrator two years after it had started to manufacture the model in question and, at the time, was alleged to be representative of that model.

Whatever confusion there is in the matter of these different samples submitted by complainant to the Administrator was created by complainant itself, and in the face of its inconsistent allegations and proofs, we are of the opinion that the Administrator's selection of the first wardrobe, as representative of those sold by complainant, was not unreasonable. Certainly, complainant did not sustain the burden, which rested upon it, of demonstrating that the Administrator was in error in his conclusions on this aspect of the controversy.

In establishing a maximum price for complainant's product in line with the maximum prices established by the regulation, the Administrator considered the prices charged during the base period of March, 1942, for four cedar-lined wardrobes pro-

duced by other manufacturers. These were compared with complainant's product and found similar by a qualified expert, whose opinion the Administrator accepted as reliable evidence. The price established for complainant's product was close to the top of the range of the base period prices charged for the four comparables. These other wardrobes had outside veneer, three of them being of hardwood. Complainant asserts that the four wardrobes in question were not being currently sold at the time the maximum price was established for the complainant. As to two of the four comparable wardrobes, such is the fact. A third had been sold continuously from March, 1942, and was still being sold at the time complainant's protest was filed. The fourth wardrobe compared was not being sold at the time of the protest proceedings but a similar model without cedar lining was being sold by the manufacturer at a lower maximum price. It appears from the record that the model with the cedar lining was not being produced because of difficulty in obtaining cedar lumber; and that seems to be the most reasonable explanation for the discontinuance of the manufacture of cedar wardrobes by two of the base period manufacturers above mentioned. There is no showing that any of the comparable products were discontinued because of the maximum prices which had been established.

■ Complaint is made that the evidence relied upon by the Administrator with respect to the wardrobes used as comparables was insufficient because based upon catalog descriptions and photographs of the products found to be comparable. However, complainant, when it filed its application for a maximum price, properly and reasonably considered the photograph and description of its product which it furnished to the Administrator adequate information upon which he could base such a price. The value and weight of the evidence of the photographs and written specifications of the comparables was for the Administrator to determine.

■ With regard to the contention that complainant's maximum price should have been determined by reference to the maximum prices of manufacturers located in Philadelphia, complainant's place of business, it may be said that it is the areas in which a manufacturer competes for customers that should be considered rather than the spot in which he is located. For those are the places which determine the prices in a free market. In this regard, we may refer to complainant's quotation in another context of his argument, "that those sellers are competitive which sell the same commodities to the same general clientele or to customers of the same general type."

As to the claim that complainant's price should have been established by a reference to the maximum prices of two specified manufacturers in Philadelphia, it appears that complainant's price was actually established at the same figure as the maximum price subsequently established for the first of these manufacturers for one of its three models which, according to the evidence, was the one generally comparable in value and serviceability to the first wardrobe submitted as an exhibit to the Administrator by the complainant—except for the fact that such manufacturer's wardrobe had a better frame construction than complainant's. With regard to the product of the other Philadelphia manufacturer, it appears from the specifications of such wardrobe that it is superior to complainant's, being substantially wider, with a walnut veneered front, a tie rack, a shoe rack, and a lock. In addition, the sample of this wardrobe which was submitted to the Office of Price Administration by the complainant was determined by a qualified expert to be "not representative of the quality of wardrobes generally sold or offered for sale at $28 each to retailers during March 1942." Such wardrobe, therefore, afforded no basis for the establishment of a maximum price for complainant.

■ We come, then, to the complaint that the Administrator's order was invalid because of its failure to establish a maximum price which would return complainant's costs, plus a profit. The regulation, however, is not required to guarantee a profit to every seller, and an individual order determining a price under the regulation need not guarantee a profit to the particular seller. A showing of high costs in

the manufacture of a product could only be considered if such costs contributed to the high quality of the product. Excessive labor or manufacturing costs do not necessarily produce a superior product, and here the evidence, in effect, supports the Administrator's conclusions that such alleged high costs did not produce a product which, if sold in a normal competitive market, would bring a price higher than that established by the Administrator's order. Complainant emphasizes that it used solid cedar in constructing its wardrobes in contrast with the plywood used by other manufacturers; but the additional costs resultant from using solid cedar do not necessarily indicate that a wardrobe so constructed is more serviceable or of more marketable value than a wardrobe constructed of plywood, and there is nothing in the evidence that tends to show that this would be the case. From the foregoing, we are constrained to conclude that the Administrator's finding that the price established for complainant was in line with maximum prices established by the regulation, is supported by substantial evidence.

■ Complainant made the objection throughout the proceedings that the order establishing maximum prices for complainant was invalid because it was not accompanied by a statement of considerations. In his brief, however, counsel for complainant concedes that the failure of the Administrator to accompany a statement of considerations with his order "does not seriously affect these proceedings, but (he) has deemed it important to bring it to the attention of this Honorable Court, that the only inference that can be drawn was, that when the Administrator issued his Order, the Administrator did not have any comparable article in mind." It is enough, then, to say that, at the time the Administrator made his order, he made a finding that the maximum prices established by the order "are in line with the maximum prices of those comparable articles for sales to the same classes of purchaser, and are, therefore, in line with the level of maximum prices established under Maximum Price Regulation No. 188." This finding is supported by substantial evidence and is sufficient to sustain the Administrator's determination.

A judgment will be entered dismissing the complaint.